**No. 13-1777**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA

      Plaintiff-Appellee,

v.

RASHOD BETHANY,

      Defendant-Appellant

---

Appeal From The United States District Court
For the Northern District of Illinois
Case No. 06 CR 346-1
The Honorable Harry D. Leinenweber

---

## BRIEF AND REQUIRED APPENDIX OF
## DEFENDANT-APPELLANT RASHOD BETHANY

---

Beau B. Brindley
53 W. Jackson Blvd. #1410
Chicago, IL 60604
(312) 765-8878
FAX: (312) 276-8040

ATTORNEY FOR:
RASHOD BETHANY

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES ....................................................................................iii

Jurisdictional Statement ........................................................................................... 1

Issues Presented ....................................................................................................... 1

Statement of the Case............................................................................................... 2

Summary of the Facts .............................................................................................. 2

Summary of the Argument........................................................................................ 5

Argument .................................................................................................................. 7

  I. The District Court Erred in Denying Mr. Bethany's Motion to Withdraw His Guilty Plea............................................................................................................................... 7

    A. Standard of Review ........................................................................................ 7

    B. The District Court's failure to inform Mr. Bethany that it must consult the Sentencing Guidelines and the § 3553 factors in determining his sentence violated Mr. Bethany's substantial rights ................................................................................... 7

    C. The District Court's failure to inform Mr. Bethany that statements he made during his change of plea hearing could be used to prosecute him rendered his plea involuntary and unknowing..................................................................................................... 13

  II. The District Court erred in determining that Mr. Bethany was subject to a twenty year mandatory minimum sentence ......................................................................... 16

    A. Standard of Review ...................................................................................... 16

    B. Argument...................................................................................................... 16

  III. The District Court erred in applying the § 2D1.1(b)(12) enhancement for maintaining a drug premises ........................................................................................ 18

    A. Standard of Review ...................................................................................... 18

    B. Argument...................................................................................................... 18

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Constitutional Provisiosn**

U.S. Const., amend. V ........................................................................................ 14, 15, 17
U.S. Const., amend. VI. ........................................................................................... 16, 17
U.S. Const., art. 1, § 9, cl. 3. ................................................................................. 16, 19


**Cases**

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) ........................................ 5, 16, 17, 18
*Blakely v. Washington,* 542 U.S. 296 (2004) ...................................................... 16
*Carmell v. Texas*, 529 U.S. 513(1999) .............................................................. 16
*Gall v. United States*, 552 U. S. 38 (2007) ......................................................... 19
*Harris v. United States*, 536 U.S. 545 (2002) ................................................... 16
*McCarthy v. United States*, 394 U.S. 459 (1969) ........................................... 8, 12
*Peugh v. United States*, 133 S. Ct. 2072 (2013) ........................................ 5, 18, 19
*United States v. Adams*, 256 Fed. Appx. 796 (7th Cir. 2007) ............................... 9
*United States v. Akinsola*, 105 F.3d 331 (7th Cir. 1997) .................................... 12
*United States v. Booker*, 543 U. S. 220 (2005) ................................................... 19
*United States v. Bryant*, 557 F.3d 489 (7th Cir. 2009) ...................................... 14
*United States v. Claybrooks* 729 F.3d 699 (7th Cir., 2013) ......................... 16, 17
*United States v. Demaree*, 459 F. 3d 791 (7th Cir. 2006) .................................. 18
*United States v. Ellison*, 835 F.2d 687 (7th Cir. 1987) ........................................ 7
*United States v. Favara*, 615 F.3d 824 (7th Cir.2010) ...................................... 18
*United States v. Hernandez*, No. 12-1719 (7th Cir., 2013) ................................. 17
*United States v. Hodges*, 259 F.3d 655 (7th Cir.2001) ........................................ 7
*United States v. Parker*, 245 F.3d 974 (7th Cir.2001) ......................................... 7
*United States v. Parker*, 368 F.3d 963 (7th Cir. 2004) ........................................ 9
*United States v. Romero-Benumea*, 307 Fed.Appx. 995 (7th Cir. 2009) .......... 9, 12
*United States v. Seymour*, 519 F.3d 700 (7th Cir. 2008) ................................... 16
*United States v. Sura*, 511 F.3d 654 (7th Cir. 2007) ........................................... 8
*United States v. Walker*, 447 F.3d 999 (7th Cir 2006) ......................................... 7
*United States v. Watch*, 7 F.3d 422 (5th Cir. 1993) .......................................... 15


**Statutes and Other Authority**

18 U.S.C. § 3553(a) ...................................................................................... passim.
21 U.S.C. § 851 ................................................................................................. 17
Fed. R. Crim. Pro. 11 .................................................................................... passim.
U.S.S.G. § 2D1.1(b)(12) .................................................................................. 5, 18
U.S.S.G. § 2D1.1(b)(2) ....................................................................................... 18

## JURISDICTIONAL STATEMENT

The Northern District of Illinois had jurisdiction over this criminal action pursuant to 18 U.S.C.A. § 3231 and Rule 18 of the Federal Rules of Criminal Procedure. The appeal is from a judgment of conviction and sentence that disposed of all claims with respect to all parties. Mr. Bethany was found guilty of conspiracy to possess and distribute a controlled substance in violation of 21 U.S.C. §§ 841, and 846. R. 296. The district court entered the judgment of conviction as to the defendant-appellant, Rashod Bethany, on April 11, 2013. Mr. Bethany was sentenced to a term of imprisonment of 300 months. R. 296.  Mr. Bethany filed a timely notice of appeal on April 11, 2013. R. 298. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## ISSUES PRESENTED

1. Whether the district court erred in denying Mr. Bethany's motion to withdraw his guilty plea.

2. Whether the district court's fact-finding that resulted in a 20-year mandatory minimum sentence violated Mr. Bethany's Sixth Amendment rights pursuant to the Supreme Court's ruling in *Alleyne*.

3. Whether the district court's application of the U.S.S.G. §§ 2D1.1(b)(12) and 2D1.1(b)(2) enhancements violated the Supreme Court's ruling in *Peugh*.

## STATEMENT OF THE CASE

Mr. Bethany was charged with conspiracy to possess and distribute 50 grams or more of a substance containing crack cocaine, under 18 U.S.C. §§ 842 and 846. Mr. Bethany entered a plea of guilty on January 9, 2009. R. 133. By agreement of the parties, the plea was entered without an admission of drug type or quantity by Mr. Bethany. 1/09/2009 Tr. at 6-7. On December 6, 2010, Mr. Bethany moved to withdraw that guilty plea. R. 200 His motion was denied on January 4, 2011. R. 209. Mr. Bethany moved to reconsider on January 27, 2011, R. 212, and that motion was denied on February 7, 2011. R. 218. On March 21, 2013, Mr. Bethany was sentenced to 300 months' incarceration. R. 296. Mr. Bethany now appeals the district court's denial of his motions to withdraw his guilty plea, the court's finding of a 20-year mandatory minimum, and the court's imposition of a two-level guidelines enhancement for maintenance of a drug trafficking premises, and the court's imposition of a two-level guideline enhancement for using violence or the threat of violence.

## SUMMARY OF THE FACTS

Defendant-appellant Rashod Bethany entered a guilty plea on January 9, 2009, to Count 1 of a Second Superseding Indictment, which charged him with drug conspiracy, specifically that in or around January of 2006 and continuing to in or about May of 2006, he conspired with others to possess with intent to distribute and to distribute a controlled substance, namely 50 grams or more of mixtures or substances containing cocaine base in the form of crack cocaine. 1/09/2009 Tr. While the indictment contained that specific allegation about drug type and quantity, Mr. Bethany actually agreed only that he conspired to possess and distribute some amount of cocaine base, without agreeing or

admitting that the substance constituted crack cocaine. 1/09/2009 Tr. at 6-7. Prior to making any admission at his change of plea hearing, Mr. Bethany was placed under oath by the Court. *Id,* at 3. However, at no time before or after being administered the oath was Mr. Bethany informed that any statements he made during the course of the plea haring could be used against him by the government, including in a prosecution for perjury or false statement. *Id.*

At the time of the plea, the government indicated that it would be prepared to provide evidence proving that the substance was in fact crack cocaine, and that Mr. Bethany ran a drug operation on the South Side of Chicago out of two drug houses with multiple people working under him, and that a confidential informant working for the government purchased drugs directly from Mr. Bethany on three specific occasions. 1/09/2009 Tr. at 5. Mr. Bethany did not agree to any of these specific facts. *Id.* at 7. Mr. Bethany did agree, however, that he distributed cocaine base, and the government indicated that it was comfortable with the issue of the substance could be classified as crack being left to the sentencing judge. *Id.*

On December 6, 2010, Mr. Bethany moved to withdraw his guilty plea. R. 200. He argued that the plea was invalid because the district court had not informed him, as required by Rule 11 of the Federal Rules of Criminal Procedure, that the sentencing judge would calculate and consult the Federal Sentencing Guidelines or 18 U.S.C. § 3553 when deciding upon a proper sentence for the charge to which he was pleading guilty. R. 200. The court had made no such admonitions during the Rule 11 colloquy at the time that Mr. Bethany changed his plea to guilty, instead only advising on the 30-year statutory maximum sentence and the 0-20 year mandatory minimum sentence, which the court

indicated was contingent upon the determination of drug type at sentencing. 1/09/2009 Tr. at 9.

Mr. Bethany's motion was denied on January 4, 2011. The district court indicated that any errors in the Rule 11 colloquy were harmless as they did not impact any substantial rights. R. 209. Mr. Bethany moved to reconsider on January 27, 2011, based on the district court's failure to admonish him that statements he made in changing his plea could be used against him in a prosecution for perjury or false statement, the knowledge of which Mr. Bethany argued was certainly a substantial right. R. 212. The district court disagreed and denied the motion to reconsider on February 7, 2011. R. 218.

On March 21, 2013, Mr. Bethany was sentenced to 300 months following a three-day sentencing hearing. R. 296. During the sentencing hearing, the government called multiple witnesses to prove the allegations they had made regarding drug type, quantity, and activity, as well as to provide evidence in aggravation. 3/18/2013 Tr., 3/20/2013 Tr., 3/21/2013 Tr. Based on the evidence provided by the government during this hearing, the district court found, over Mr. Bethany's objection, that a 20-year mandatory minimum sentence applied based on its finding, by a preponderance of the evidence, that the substance involved in the offense was greater than 280 grams of crack cocaine. 3/21/2013 Tr. at 519, 551. This finding was made over the objection of Mr. Bethany, who explicitly cited the Supreme Court's then-pending consideration of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). 3/21/2013 Tr. at 495.

At sentencing, the district court also applied, over Mr. Bethany's objection, a two-level enhancement under U.S.S.G. §2 D1.1(b)(12) for maintaining a premises for the purposes of narcotics trafficking. 3/21/2013 Tr. at 548. Mr. Bethany objected to the

4

application of this enhancement, noting that it was not in force at the time of his commission of the offense and thus that it was a violation of the *Ex Post Facto* clause of the constitution. *Id*. The district court applied the enhancement, along with an additional enhancement for use of violence pursuant U.S.S.G. § 2D1.1(b)(2), in accordance with *United States v. Demaree*, 459 F. 3d 791 (7th Cir. 2006), in which the Seventh Circuit had previously sanctioned such practice. However, the Supreme Court subsequently decided *Peugh v. United States*, 133 S. Ct. 2072 (2013), in which it held that applying guidelines not in force at the time of the commission of an offense is a violation of the *Ex Post Facto* Clause if it results in a greater sentencing range.

Mr. Bethany now appeals the district court's denial of his motions to withdraw his guilty plea, the court's finding of a 20-year mandatory minimum, and the court's imposition of a two-level guidelines enhancements for maintenance of a drug trafficking premises and use of violence or the threat of violence as part of a drug trafficking crime.

## SUMMARY OF THE ARGUMENT

Mr. Bethany's plea should have been withdrawn by the district court. The requirements of Federal Rule of Criminal Procedure 11 were not met by the court that took Mr. Bethany's plea. Mr. Bethany was not advised of the nature or existence of the role the Federal Sentencing Guidelines and 18 U.S.C. § 3553 would have in determining his sentence, as required by Rule 11. He was also put under oath and allowed to make statements to the court without being advised that any statements he made could be used against him, including in a prosecution for perjury or false statement, which was also required under Rule 11. These omissions were material and rendered Mr. Bethany's plea unknowing or involuntary, as they impacted his substantial rights.

5

The district court's determination that a 20-year minimum sentence applied to Mr. Bethany was improper and his sentence should thus be vacated. The court made this determination after deciding, by a preponderance of the evidence, that Mr. Bethany's offense involved more than 280 grams of crack cocaine. This decision was not the district court's to make, pursuant to the Supreme Court's ruling in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), where it held that any factor increasing the mandatory minimum sentence must be decided beyond a reasonable doubt by a jury or by a defendant's admission, and cannot be found by a judge at sentencing. The district court's decision violated this rule.

The district court's imposition of two-level enhancements for Mr. Bethany's maintenance of a premises for the purpose of narcotics trafficking and his use of violence, pursuant to U.S.S.G. §2D1.1(b)(12) and U.S.S.G. §2D1.1(b)(2) was also improper. These guidelines were not in effect at the time of his commission of the offense and thus their application violated the *Ex Post Facto* clause of the United States Constitution. The truth of this assertion has recently been clarified by the United States Supreme Court in *Peugh v. United States*, 133 S. Ct. 2072 (2013). This error and the improperly calculated mandatory minimum sentence, taken together or individually, warrant a new sentencing hearing for Mr. Bethany.

**ARGUMENT**

I.    **THE DISTRICT COURT ERRED IN DENYING MR. BETHANY'S MOTION TO WITHDRAW HIS GUILTY PLEA.**

    **A.  Standard of review**

A motion to withdraw a guilty plea should be granted whenever the defendant is able to show "a fair and just reason for requesting the withdrawal". Fed. R. Crim. Pro. 11(d)(2)(B); *United States v. Walker*, 447 F.3d 999, 1004 (7th Cir 2006). Whether the basis for a defendant's request to withdraw his plea constitutes a fair and just reason generally falls within the discretion of the district court. *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir.2001); *United States v. Parker*, 245 F.3d 974, 976 (7th Cir.2001). However, under some circumstances a plea is necessarily invalid. For example, a plea that was not entered either knowingly or voluntarily must be withdrawn. *United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir. 1987).

    **B.  The District Court's Failure to Inform Mr. Bethany that it Must Consult the Sentencing Guidelines and the § 3553 Factors in Determining his Sentence Violated Mr. Bethany's Substantial Rights.**

The procedural requirements of Rule 11 of the Federal Rules of Criminal Procedure are designed to ensure that the defendant is in fact entering the plea both knowingly and voluntarily. To that end, Rule 11 contains a list of factors that must be explained to a defendant prior to acceptance of his plea. "Rule 11(b) leaves no doubt that the court is required to touch upon all of the topics listed there. It says that before the court may accept a plea of guilty, 'the court must address the defendant personally in open court,' and that during this colloquy, 'the court must inform the defendant of, and

determine that the defendant understands,' each item in the list that follows." *United States v. Sura*, 511 F.3d 654 (7th Cir. 2007) (citing Rule 11).

Without adherence to the procedural requirements of Rule 11, there is no basis for concluding that a defendant's plea was actually made knowingly and voluntarily. *Id.* ("[Rule 11] exists 'to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary ... [and] to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination) (*citing McCarthy v. United States*, 394 U.S. 459, 465 (1969)).

In this case, the district court failed to comply with the requirements of Rule 11 during Mr. Bethany's plea colloquy. Specifically, the district court failed to inform the defendant that "in determining a sentence, the [court is obliged] to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);" F.R. Crim. Proc. 11(b)(1)(M); *See*, *generally* 1/09/2009 Tr. Therefore, the district court violated Rule 11.

The district court's error is compounded by the fact that Mr. Bethany had no written plea agreement, so there was no documentation whatsoever to indicate that Mr. Bethany was ever informed about the district court's obligation to calculate the guidelines correctly and consider the guidelines or the district court's authority to deviate from those guidelines.

In addition, during Mr. Bethany's plea colloquy there was significant discussion of whether Mr. Bethany would receive the statutory sentencing range applicable to crack or powder cocaine offenses. The implication was that Mr. Bethany's sentence would be

determined exclusively by the crack/powder decision. *See* 1/09/2009 Tr. at 6-7. This is not accurate. A whole host of other factors influenced Mr. Bethany's final sentence, particularly the applicable sentencing guideline range, which was never even mentioned to Mr. Bethany during his plea colloquy.

Mr. Bethany was also never informed that § 3553(a) factors could result in an upward or downward deviation from his guidelines range. Without that knowledge, there was no way to establish that Mr. Bethany entered his plea knowingly. He was not given the knowledge to which Rule 11 dictates he is entitled.

Other cases in the Seventh Circuit where a plea was upheld after the district court failed to meet the requirements of Rule 11(b)(1)(M) concern situations where the district court was partially compliant with Rule 11(b)(1)(M). For example, in *United States v. Romero-Benumea* the district court noted that it would " 'have to give careful consideration to a number of different factors' but specifically mentioned only the sentencing guidelines and no other factors in 18 U.S.C. § 3553(a)". *United States v. Romero-Benumea*, 307 Fed.Appx. 995, 997 (7th Cir. 2009). In that case, the Seventh Circuit noted that the defendant was informed of the fact that multiple different considerations would go into determining the defendant's ultimate sentence and the defendant had agreed in his plea to be sentenced within the guidelines range. *Id. See, also, United States v. Adams*, 256 Fed. Appx. 796 (7th Cir. 2007) (noting failure to inform the defendant of the ability to depart was not reversible under plain error standard because the defendant could not be given an above guidelines sentence due to the statutory maximum); *United States v. Parker*, 368 F.3d 963 (7th Cir. 2004) (district court's use of the phrase "within the guidelines" as opposed to "pursuant to the

guidelines" did not constitute plain error because the remainder of the plea colloquy adequately informed the defendant of the district court's ability to deviate from the guidelines range).

Mr. Bethany, by contrast, was absolutely not informed about the guidelines at all, or instructed that the district court could deviate from those guidelines only after the correct calculation of the applicable guidelines range was made and considered. This is undoubtedly an error. It is also a prejudicial one. In the absence of information about the applicable guidelines range, Mr. Bethany might well conclude that he is just as likely to get a sentence close to the low end of the applicable statutory range as a sentence closer to the high end. For example, without any knowledge about the guidelines, Mr. Bethany could have surmised that a sentence of 20 years or less was just as likely as a sentence of 30 years. That was not an accurate assessment of Mr. Bethany's situation. Under the guidelines found by the district court at sentencing, Mr. Bethany had an advisory sentencing range of 360 months to life. 3/21/2013 Tr. at 550. Hence, a sentence close to the 30-year maximum was much more likely than a sentence of 20 years or less. Mr. Bethany had a right to know that before he entered his plea. Without that knowledge, he was incapable of knowingly and voluntarily pleading guilty.

A plea colloquy that caused him to falsely believe he was just as likely to receive a sentence of 20 years as 30 years was absolutely incapable of informing him of the ramifications of his plea. To knowingly enter a plea, he had to be informed of the role the guidelines would play at sentencing. He received no information about that whatsoever. Therefore, Rule 11 was violated and Mr. Bethany's plea was not knowingly entered. A

plain violation of Rule 11 definitely constitutes a fair, just, and necessary reason for the withdrawal of Mr. Bethany's guilty plea.

It is not the absence of his knowledge of the specific guideline range the Court would apply that renders his plea involuntary, but rather the absence of his knowledge that the Court would apply any guideline range whatsoever. Rule 11, as well as fundamental fairness, requires that a defendant's knowledge on this point be made explicitly clear prior to a court accepting his plea. Without an explicit understanding that a guideline range would in fact be calculated and consulted as a means of determining Mr. Bethany's appropriate sentence, there was nothing to indicate to Mr. Bethany the full extent of the consequences of his guilty plea. A defendant has a right to know what factors will influence the sentence he may receive. Without knowing that fundamental information, a defendant cannot possibly make a knowing decision about whether to enter a plea of guilty. Without being informed that his sentence would be calculated based on an analysis of the sentencing guidelines and the factors set forth under § 3553, in Mr. Bethany's mind, there was no reason for him to believe that, for example, a 20-year sentence was not just as likely as a 30-year sentence. He was not given the fundamental information necessary to allow him to understand the ramifications of his plea—i.e. how his sentence would be calculated and what factors could impact it.

Mr. Bethany was allowed to believe his particular plea was governed only by a statutory range of 20 to 30 years if the substance was found to be crack cocaine. He was given no indication that any other factors would impact his sentence. It is patently unreasonable to suggest that a defendant can knowingly enter a guilty plea without being given knowledge about the fundamental factors that will dictate what his sentence will

11

be. That is why Rule 11 requires that the defendant be admonished that the sentencing guidelines will be calculated and considered, along with the § 3553 factors. The failure to provide Mr. Bethany with this fundamental information provides a fair and just reason for the withdrawal of his plea and prevented him from entering his guilty plea with full knowledge.

The Seventh Circuit has indeed held that "non-compliance with a single provision of Rule 11" does not automatically warrant the withdrawal of a guilty plea. *See United States v. Akinsola*, 105 F.3d 331, 334 (7th Cir. 1997). If, for example, the court in this case had properly informed Mr. Bethany of its obligation to consider the guidelines and the § 3553 factors, but had neglected to inform him of the $100 special assessment, there would be no fair and just reason to withdraw the plea. *See* Fed. R. Crim. P. 11(b)(1)(L). While "literal recitation of Rule 11 is unnecessary," a plea colloquy must "substantially compl[y] with the Rule's admonishments" to be sufficient to ensure a voluntary guilty plea. *United States v. Romero-Benumea*, 307 Fed.Appx. 995, 997 (7th Cir. 2009). A failure to inform the defendant about either the existence or necessity of consulting both the sentencing guidelines and § 3553 factors – undeniably two of the most important factors in determining a defendant's sentence – cannot be held to "substantially comply" with the requirements of Rule 11. A substantive aspect of Rule 11 was completely disregarded.

Indeed, Rule 11 itself specifically indicates that a variance from its requirements is not harmless if substantial rights are affected. Fed. R. Crim. P. 11(h). Rule 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S.

459, 465 (1969). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Id.* at 466. A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* The district court denied Mr. Bethany's motion to withdraw his guilty plea because it found that the court's failure to abide by all of the provisions of Rule 11 did not involve Mr. Bethany's substantial rights. R. 211 at 7. This conclusion was erroneous. A plea entered into without knowledge of the law regarding the factors that will largely determine the resulting sentence cannot be said to be truly voluntary. By failing to ensure the complete voluntariness of his plea, the district court's failure to inform Mr. Bethany of its obligation to consult the sentencing guidelines and § 3553 factors unquestionably impacted Mr. Bethany's substantial rights and rendered his plea unknowing and involuntary. A defendant's right for a district court to accept a plea only if it is knowingly and voluntarily given is substantial. That lack of information provided to Mr. Bethany constitutes a fair and just reason for the withdrawal of his plea.

### C. The District Court's Failure to Inform Mr. Bethany that Statements He Made During his Change of Plea Hearing Could be Used to Prosecute him Rendered his Plea Involuntary and Unknowing.

Rule 11(b)(1)(A) asserts that, prior to accepting a guilty plea, the district court must inform the defendant of "the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement the defendant gives under oath." In this case, the district court placed the defendant under oath and allowed him to answer questions without ever informing him that his answers could be used against him in a subsequent prosecution. 1/09/2009 Tr. at 2-3. Hence, Rule 11 was violated again during the plea colloquy. Mr. Bethany entered his plea without knowing that his answers

could be used against him in subsequent prosecutions. He had a right to know that. He had a Fifth Amendment right not to make any of the statements during his plea colloquy that could be used against him in a subsequent prosecution. Yet, the district court failed to inform him of this fact as Rule 11 requires. One surely cannot make a knowing decision to participate in a plea colloquy without being advised that the statements made during this colloquy can be used against him in a subsequent prosecution. That is knowledge to which Rule 11 and the Fifth Amendment entitled Mr. Bethany at the time of his guilty plea. And it was knowledge he was denied by the district court's error.

The district court denied Mr. Bethany's motion to withdraw his guilty plea on this basis because it found that the Court's failure to abide by all of the provisions of Rule 11 did not involve Mr. Bethany's substantial rights. R. 218. The Fifth Amendment right to remain silent and not make statements that can be used against you in subsequent prosecutions is undoubtedly a fundamental right. Any claim that the right not to incriminate oneself, as enshrined in the Fifth Amendment, is insubstantial is obviously erroneous. The right not to incriminate oneself is undoubtedly a substantial and fundamental right as are the prophylactic protections of that right such as the *Miranda* warnings and, in the context of guilty pleas, Rule 11(b)(1)(A) of the Federal Rules of Criminal Procedure. Therefore, the Court's violation of Rule 11(b)(1)(A) involved the defendant's substantial rights and his guilty plea must be withdrawn. *United States v. Bryant*, 557 F.3d 489, 495(7th Cir. 2009).

In its order denying Mr. Bethany's motion to reconsider the withdrawal of his guilty plea, which was predicated on this ground, the district court indicated that substantial rights "generally are thought to be limited to (1) whether the guilty plea was

coerced; (2) whether the defendant understood the nature of the charges; and (3) whether the defendant understood the consequences of his plea." R. 218, *citing United States v. Watch*, 7 F.3d 422, 428 (5th Cir. 1993). It then concluded that the failure to inform Mr. Bethany that statements he made could be used against him in a prosecution for perjury "clearly does not affect substantial rights." *Id.*

Even by the definition cited by the district court, this omission from the plea colloquy certainly affected substantial rights, specifically in that it failed to ensure that "the defendant understood the consequences of his plea," much like the failure to inform him of the court's duty to consult the Sentencing Guidelines and § 3553 factors. Rule 11(b)(1)(A) indicates that a guilty plea cannot be predicated on statements made by a defendant during a plea colloquy when that defendant has not been advised on the ramifications of those statements and the government's ability to use them against him. A defendant who has not been advised that his plea colloquy statements can be used against him, as a matter of necessity, lacks knowledge to which the Fifth Amendment and Rule 11(b)(1)(A) entitle him. A plea that is not entered knowingly must be withdrawn. There is no doubt that the fact that the statements made during the plea colloquy could be subsequently used against Mr. Bethany constituted knowledge to which he was entitled, and of which he was deprived. Likewise, the absence of this knowledge deprived him of an understanding of the consequences of his plea.  Therefore, his guilty plea was not knowingly entered and must be withdrawn.

## II. THE DISTRICT COURT ERRED IN DETERMINING THAT MR. BETHANY WAS SUBJECT TO A TWENTY YEAR MANDATORY MINIMUM SENTENCE.

### A. Standard of review

An *Apprendi* issue is subject to *de novo* review. *United States v. Seymour*, 519 F.3d 700, 709 (7th Cir. 2008).

### B. Argument.

In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that the Sixth Amendment allows judges to independently determine facts that raise a defendant's mandatory minimum sentence. *Harris*, 536 U.S. at 565. In *Alleyne*, the Court reversed course and decided that the Sixth Amendment and the Fifth Amendment's Due Process Clause require a jury to determine any fact that increases the mandatory minimum punishment for an offense. *Alleyne*, 133 S. Ct. at 2162-63. After *Alleyne*, a defendant's mandatory minimum sentence must be determined by the drug quantity described in a jury's special verdict form, or by the facts admitted to during a guilty plea. *United States v. Claybrooks* 729 F.3d 699, (7th Cir., 2013), *citing Blakely v. Washington,* 542 U.S. 296, 303 (2004) (holding that statutory maximum for Sixth Amendment "purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant")

In *Alleyne*, the Supreme Court held that "any fact that increases a mandatory minimum sentence is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. Therefore, a district court errs when it makes a judicial finding of fact that increases the

statutory mandatory minimum sentence facing a defendant. *United States v. Hernandez*, No. 12-1719 (7th Cir., 2013).

In this case, the district court found, explicitly by a preponderance of the evidence, that Mr. Bethany was responsible for in excess of 280 grams of crack cocaine, thereby setting his statutory minimum sentence at 10 years, which was doubled to 20 years due to Mr. Bethany's prior conviction for a drug offense pursuant to notice provided by the government pursuant to 21 U.S.C. §851. 3/21/2013 Tr. at 519, 551. This finding was made over the objection of Mr. Bethany, who explicitly cited the Supreme Court's then-pending consideration of *Alleyne*. 3/21/2013 Tr. at 495.

During his change of plea hearing, Mr. Bethany explicitly denied that the controlled substance he distributed could be proved to be crack. 1/09/2009 Tr. at 9. He also explicitly did not agree to a specific quantity of controlled substance that he distributed. 1/09/2009 Tr. at 4. The government did not object to this tactic and explicitly said that the issues of drug type and quantity would be left for the district court to decide at sentencing. 1/09/2009 Tr. at 5. The government and the district court judge who took Mr. Bethany's plea explicitly stated that if the sentencing court did not find that the distributed substance was crack, there would be no statutory minimum sentence. 1/09/2009 Tr. at 8-9.

Under the rule of *Alleyne*, the district court's finding, by a preponderance of the evidence, which increased Mr. Bethany's statutory minimum sentence was improper and violated his Fifth and Sixth Amendment rights. The district court was entitled to calculate Mr. Bethany's drug type and quantity as it impacted the guidelines range. *See Claybrooks*, 729 F.3d at 715. It was not entitled to use that finding to establish the

statutory minimum sentence, as per *Alleyne*. On the basis of Mr. Bethany's plea, which was the only information that could be considered proven beyond a reasonable doubt, Mr. Bethany could be held responsible only for distributing a quantity of cocaine base, not necessarily in the form of crack cocaine, with no minimum sentence applying. The district court's contrary finding was indisputably in error and warrants a new sentencing hearing.

## III.   THE DISTRICT COURT ERRED IN APPLYING THE §2D1.1(B)(12) ENHANCEMENT FOR MAINTAINING A DRUG PREMISES.

### A.  Standard of review

The court reviews questions of law, and the procedures used by the district court at sentencing *de novo*. *United States v. Favara*, 615 F.3d 824, 828 (7th Cir.2010).

### B. Argument.

The district court applied two-level guideline enhancements to Mr. Bethany (1) under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purposes of narcotics trafficking; and under (2) U.S.S.G. § 2D1.1(b)(2) for use of violence or the threat of violence. 3/21/2013 Tr. at 548. It did so over Mr. Bethany's express objection that the § 2D1.1(b)(12) enhancement should not be applied because it was not in force at the time of his commission of or plea to the offense. 3/21/2013 Tr. at 548.  The same logic applies to use of violence enhancement under § 2D1.1(b)(2).

In *Peugh v. United States*, 133 S. Ct. 2072 (2013), the Supreme Court held that application of Guidelines that came into effect after the commission of an offense violates the *Ex Post Facto* clause if it results in a higher guidelines range. In so doing, the Court specifically overruled *United States v. Demaree*, 459 F. 3d 791 (7th Cir. 2006), in which the Seventh Circuit had previously sanctioned such practice.

In so ruling, the Supreme Court found that, though no longer mandatory following *United States v. Booker*, 543 U. S. 220 (2005), the Guidelines still play an important role in sentencing procedures because the district court must begin "by correctly calculating the applicable Guidelines range," *Gall v. United States*, 552 U. S. 38, 49 (2007), and then consider the parties' arguments and factors specified in 18 U. S. C. §3553(a). 552 U. S., at 49-50. The court "may not presume that the Guidelines range is reasonable," *Id*. at 50, and must explain the basis for its sentence on the record. Therefore, the Court found, amendments to the guidelines that raise a defendant's advisory sentencing range create a "significant risk" of a higher sentence and offend "one of the principal interests that the *Ex Post Facto* Clause was designed to serve, fundamental justice." *Peugh*, 133 S.Ct. at 2095 (*citing Carmell v. Texas*, 529 U.S. 513, 531 (1999)).

At the time Mr. Bethany committed the offense in this case, there was no enhancement in the Guidelines for maintaining a drug premises or for use of violence or threat of violence in the course of committing a drug crime. Those enhancements were added to the Guidelines effective November 1, 2010. U.S.S.G. Appx C, amd 748. This was nearly two years after Mr. Bethany pled guilty in this case. He did not have fair notice at the time of his plea or at the time of his commission of the underlying offense, that his sentence could be increased for the maintenance of a premises for the purpose of furthering his narcotics trafficking, or for use of violence in the course of committing a drug crime. The application of these two-level enhancements increased his advisory sentencing guideline range and thereby increased the sentence he was likely to receive. In doing so, the application violated the *Ex Post Facto* Clause of the United States

Constitution, pursuant to the Supreme Court's ruling in *Peugh*. Mr. Bethany is, therefore, entitled to a new sentencing hearing.

## CONCLUSION

WHEREFORE, Mr. Bethany prays that this Court will reverse his conviction and vacate his guilty plea due to the district court's errors in his plea colloquy, which rendered it involuntary and unknowing. In the alternative, Mr. Bethany prays that this Court will vacate his sentence due to the violation of the principles of *Peugh* and *Alleyne*.

Respectfully submitted,
Rashod Bethany


By: s/Beau B. Brindley
Attorney for Defendant-appellant



THE LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

## <u>RULE 3(d) CERTIFICATE OF COMPLIANCE</u>

Pursuant to Circuit Rule 30(d), I, Beau B. Brindley, counsel for Defendant-

Appellant, Mr. Rashod Bethany, state that the appendix included with this brief on appeal

incorporates that material required under Circuit Rule 30 (a) and all material required

under Circuit Rule 30 (b) has been included in the attached appendix required by Circuit

Rule 30.

Respectfully submitted,
Rashod Bethany


By: s/Beau B. Brindley
Attorney for Defendant-appellant


THE LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

## <u>RULE 32 CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,601 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using 12 point Times New Roman in Microsoft Word for Mac 2011.

<div style="margin-left: 50%;">

Respectfully submitted,
Rashod Bethany

By: <u>s/Beau B. Brindley</u>
Attorney for Defendant-appellant

</div>

THE LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

## **<u>RULE 31(e) CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Circuit Rule 31(e), I hereby certify that I have filed electronic versions of Mr. Rashod Bethany's opening brief as well as all appendix material available in a non-scanned PDF format.

Respectfully submitted,
Rashod Bethany


<u>By: s/Beau B. Brindley</u>
Attorney for Defendant-appellant

THE LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

23

## <u>CERTIFICATE OF SERVICE</u>

I, Beau B. Brindley, hereby certify that I caused a true and accurate copy of the attached corrected Brief and Required Appendix of Defendant-Appellant Rashod Bethany to be served upon the government by electronically serving it through the CM/ECF system November 12, 2013.

Respectfully submitted,
Rashod Bethany


By: s/Beau B. Brindley
Attorney for Defendant-appellant

THE LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

**No. 13-1777**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA

      Plaintiff-Appellee,

v.

RASHOD BETHANY,

      Defendant-Appellant

---

Appeal From The United States District Court
For the Northern District of Illinois
Case No. 06 CR 346-1
The Honorable Harry D. Leinenweber

---

## REQUIRED APPENDIX OF
## DEFENDANT-APPELLANT RASHOD BETHANY

---

Beau B. Brindley
53 W. Jackson Blvd. #1410
Chicago, IL 60604
(312) 765-8878
FAX: (312) 276-8040

ATTORNEY FOR:
RASHOD BETHANY

# TABLE OF CONTENTS

JUDGMENT AND COMMITMENT......................................................................................... A1

January 9, 2009 Transcript – Change of Plea ........................................................... A7

Order Denying Plea Withdrawal............................................................................. A21

Order Denying Motion to Reconsider...................................................................... A28

EXCERPTS FROM March 21, 2009 Transcript – Sentencing Hearing................................... A29

      Court's Finding of Drug Type and Quantity..................................................... A30

      Court's Rulling on Guidelines: Credible Threat of Violence and
      Maintanence of Drug Premises........................................................................ A31

      Court's Statement of Statutory Minimum........................................................ A34

# UNITED STATES DISTRICT COURT

For the Northern District of Illinois Eastern Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Rashod Bethany | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  06 CR 346-1<br><br>USM Number:  18695-424<br><br>Beau B. Brindley<br><u>Defendant's Attorney</u> |

## THE DEFENDANT:

X pleaded guilty to count(s)    One of the second superseding indictment.

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC §846 | Conspiracy to Possess with Intent to Distribute and to Distribute Crack Cocaine | 1/2006 | One |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s)   original and superseding indictment   ☐ is   X are   dismissed on the motion of the United States.
and all remaining counts of the second superseding indictment.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

March 21, 2013
Date of Imposition of Judgment

Signature of Judge

Judge Harry D. Leinenweber
Name and Title of Judge

April 9, 2013
Date

## APPENDIX 1

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT: | Rashod Bethany |
| CASE NUMBER: | 06 CR 346-1 |

Judgment — Page ___2___ of ___6___

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Three Hundred (300) Months on Count One of the Second Superseding Indictment.

X    The court makes the following recommendations to the Bureau of Prisons:
    Placement in the Residential Drug and Alcohol Treatment Program at the BOP.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

## APPENDIX 2

AO 245B    (Rev. 09/11) Judgment in a Criminal Case    **Document: 25**    **Filed: 11/12/2013**    **Pages: 64**
Sheet 3 — Supervised Release

| | Judgment—Page ___3___ of ___6___ |

DEFENDANT:      Rashod Bethany
CASE NUMBER:    06 CR 346-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     Five (5) Years on Count One
of the Second Superseding Indictment.

     The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

     If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

     The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

# APPENDIX 3

AO 245B     (Rev. 09/11) Judgment in a Criminal Case  Document: 25       Filed: 11/12/2013       Pages: 64
            Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:        Rashod Bethany
CASE NUMBER:      06 CR 346-1

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall participate in drug aftercare program at the direction of U.S. Probation Office.

## APPENDIX 4

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties
Case: 1:06-cr-00346 Document #: 296 Filed: 03/21/13 Page 5 of 6 PageID #:771
Case: 13-1777    Document: 25    Filed: 11/12/2013    Pages: 64

Judgment — Page  5  of  6

DEFENDANT:        Rashod Bethany
CASE NUMBER:      06 CR 346-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  100.00 | $ waived | $ |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the    ☐ fine   ☐ restitution.

☐  the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

## APPENDIX 5

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Case: 1:06-cr-00346 Document #: 296 Filed: 03/21/13 Page 6 of 6 PageID #:772
Case: 13-1777    Document: 25    Filed: 11/12/2013    Pages: 64

Judgment — Page    6    of    6

DEFENDANT:        Rashod Bethany
CASE NUMBER:      06 CR 346-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  X  Lump sum payment of $ ___100.00___ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## APPENDIX 6

1                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3   UNITED STATES OF AMERICA,          )
                                       )
4                    Plaintiff,        )
    -vs-                               )  Case No. 06 CR 346-1
5                                      )
    RASHOD BETHANY, also known as      )  Chicago, Illinois
6   Fat Man,                           )  January 9, 2009
                                       )  2:12 p.m.
7                    Defendant.        )

8

                          TRANSCRIPT OF PROCEEDINGS
9             BEFORE THE HONORABLE WAYNE R. ANDERSEN

10   APPEARANCES:

11   For the Government:    HON. PATRICK J. FITZGERALD
                            UNITED STATES ATTORNEY
12                          BY:  MR. JOSEPH M. FERGUSON
                                 MR. JOHN R. LAUSCH, JR.
13                          219 S. Dearborn Street
                            Chicago, IL  60604
14                          (312) 353-5300

15   For the Defendant:     MR. PATRICK W. BLEGEN
                            Law Offices of Patrick W. Blegen
16                          53 West Jackson Boulevard
                            Suite 1362
17                          Chicago, IL  60604
                            (312) 957-0100

18
                            MR. NISHAY K. SANAN
19                          327 S. Plymouth Court
                            Suite 201
20                          Chicago, IL  60604
                            (312) 692-0360
21   Court Reporter:

22            KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                       Official Court Reporter
23               United States District Court
              219 South Dearborn Street, Suite 2144-A
24                  Chicago, Illinois  60604
                 Telephone:  (312) 435-5569
25                   www.Kathyfennell.com

APPENDIX 7

```
 1     (Proceedings heard in open court:)
 2            THE CLERK:  06 CR 346, U.S.A. versus Rashod Bethany.
 3            MR. LAUSCH:  Good afternoon, Judge.  John Lausch and
 4     Joe Ferguson for the United States.
 5            MR. FERGUSON:  Good afternoon.
 6            MR. BLEGEN:  Patrick Blegen and Nishay Sanan on behalf
 7     of Mr. Bethany who's coming out of the back.
 8            MR. LAUSCH:  We're here for a change of plea.
 9            THE COURT:  Do we have a plea agreement?
10            MR. LAUSCH:  We have -- we do not have a written plea
11     agreement.  It's a blind plea to Count 1 of the indictment,
12     which I'm going to hand up to you, Judge.
13            It's the second superseding indictment, and there's
14     actually an 851 notice that also applies, which I'm handing up
15     to you as well.
16       (Tendered.)
17            THE COURT:  Okay.  And you're Mr. Bethany?
18            THE DEFENDANT:  Yes, sir.
19            THE COURT:  Could you raise your right hand.
20       (Defendant sworn.)
21            THE COURT:  Yes?
22            THE DEFENDANT:  (Nodding.)
23            THE COURT:  You can put your hand down.
24            During the last 48 hours, have you had any alcohol,
25     drugs or medication or anything that would make it difficult
```

APPENDIX 8

```
 1    for you to understand what we're doing?

 2              THE DEFENDANT:  No, sir.

 3              THE COURT:  Okay.  A couple things.  First, you have

 4    to speak so that the court reporter can get what you say.

 5              THE DEFENDANT:  Okay.

 6              THE COURT:  So I mean a lot of times we nod, for

 7    example, but it's hard for the court reporter to get that.

 8              And, secondly, obviously, I don't know the substance

 9    of this.  It's really important for me to understand it, and

10    it's really important for me to know that you understand it.

11    So during the course of doing this, doing it fast and getting

12    it done is not the goal.  I mean we have the time this

13    afternoon to do it.

14              So if you have any questions, frankly you're

15    represented by great lawyers.  I've worked with them for a long

16    time in a lot of different cases, so if you say to me you don't

17    understand something or you want to talk to your lawyers about

18    something, that's fine, okay?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  Okay.  I'm going to determine based on my

21    observations of Mr. Bethany here in court and his answer to my

22    questions that he is competent to enter into a plea.

23              Have you had a chance to study this -- this indictment

24    with your lawyers?

25              THE DEFENDANT:  Yeah.  Yes, sir.  Yes, sir.
```

APPENDIX 9

1              THE COURT:  Mr. Lausch, why don't you describe for the

2    Court the charge against Mr. Bethany.

3              MR. LAUSCH:  Yes, your Honor.

4              Mr. Bethany's charged -- it's actually a

5    multiple-count indictment.  Mr. Bethany's charged with four

6    counts.  He's pleading guilty to one of them.

7              Count 1, the count to which Mr. Bethany is pleading

8    guilty, charges him with drug conspiracy, and more fully

9    stated, beginning not later than in or around January of 2006

10   and continuing to in or about May of 2006, Mr. Bethany

11   conspired with others to possess with intent to distribute and

12   to distribute a controlled substance, and the controlled

13   substance that's mentioned there is 50 grams or more of

14   mixtures or substance containing cocaine base in the form of

15   crack cocaine.  That's Count 1.  That's the count he's pleading

16   guilty to.

17             THE COURT:  And that, if it's true, is a violation of

18   Title 21, U.S. Code, Section 841(a)(1), Title 21, U.S. Code,

19   Section 846.

20             MR. LAUSCH:  That's correct, and to be clear, and

21   Mr. Blegen can follow up, what Mr. Bethany is pleading guilty

22   to, he is pleading guilty to distributing a controlled

23   substance -- or possessing -- conspiring with regard to a

24   controlled substance; namely, cocaine base.  He is not agreeing

25   as part of this plea that it's crack cocaine or a drug amount.

## APPENDIX 10

1                THE COURT:  Okay.

2                MR. LAUSCH:  So that would be left for the judge at

3    sentencing.

4                THE COURT:  Okay.  So that Judge Leinenweber will

5    decide that at sentencing.

6                MR. LAUSCH:  Right.

7                THE COURT:  All right.  Okay.  And then what, if the

8    case were to go to trial, what facts would you have to support

9    your case?

10               MR. LAUSCH:  Yes, your Honor.

11               We would have -- at a trial, we would have recordings,

12   both audio and video recordings.  We'd have the testimony of

13   various witnesses, including people who worked underneath and

14   for Mr. Bethany.

15               And what those facts would basically show is that

16   Mr. Bethany ran a drug operation on the South Side of Chicago

17   out of two drug houses where drugs were sold.  Again, it's the

18   government's position that the drugs that were sold regularly

19   were crack cocaine.

20               Our evidence would also show that on three specific

21   occasions during that same time period, the informant bought

22   drugs directly from Mr. Bethany.  Again, the drugs that --

23   cocaine base.  The government's position is that it's crack

24   cocaine.  And this same cooperating individual also bought

25   drugs from those two drug houses.

# APPENDIX 11

1          THE COURT:  Where did this all occur?

2          MR. LAUSCH:  It all occurred in Chicago, on the South

3    Side of Chicago, roughly in the area of -- the two drug houses

4    were located at 119th and Eggleston and 120th and Emerald

5    Streets on the South Side.

6          THE COURT:  And, Mr. Blegen, at this point in time,

7    would you want to offer the Court any evidence to contradict

8    that evidence?

9          MR. BLEGEN:  Judge, we're not conceding to all of the

10   allegations made by the government.  I don't -- I don't think

11   this is the right forum to contradict it; but Mr. Bethany is

12   prepared to admit that he conspired with others to distribute

13   controlled substances, not necessarily crack.

14          But as to whether he ran a drug house or he had two or

15   other people were under him, those are all sentencing issues,

16   Judge, which we're not prepared to concede to.

17          THE COURT:  But you agree that if the Court were to

18   present the testimony that Mr. Lausch has summarized and there

19   wasn't any testimony contradicting that, that for purposes of

20   finding somebody guilty, that that's an adequate factual basis

21   for finding someone guilty.

22          MR. BLEGEN:  Yes, that would be an adequate factual

23   basis to enter a guilty plea as well.

24          THE COURT:  Right.  And that's what I -- I mean, I

25   have to approve -- I don't have to, but I'm being asked to

APPENDIX 12

 1  approve that, so I just wondered what your position is.  So

 2  that seems fair to me.

 3          MR. SANAN:  Judge, just the one thing to add to

 4  protect Mr. Bethany when we do get to a sentencing hearing

 5  because whatever happens here the Court considers beyond a

 6  reasonable doubt.

 7          Mr. Bethany is denying that the substance is crack.

 8          THE COURT:  Okay.  And the government's comfortable

 9  with that in terms of moving forward at this point?

10          MR. LAUSCH:  We are.  I think what's -- he's agreeing

11  that it's a controlled substance, and I believe he's also

12  agreeing that it's --

13          MR. SANAN:  Cocaine base.

14          MR. LAUSCH:  -- cocaine base.

15          MR. SANAN:  But denying that it's crack.

16          THE COURT:  Okay.  And then if it's an issue, Judge

17  Leinenweber can decide it, and whoever doesn't like it can

18  appeal his decision presumably.

19          MR. LAUSCH:  Correct.

20          THE COURT:  What are the potential penalties if I

21  accept the guilty plea?

22          MR. LAUSCH:  The potential penalties --

23          THE COURT:  And also why don't you describe on the

24  record the filing that you made on August 14th, 2006, regarding

25  his prior commission -- prior offense and the impact that might

## APPENDIX 13

1    have on a sentence he might receive.

2            MR. LAUSCH:  Yes, your Honor.

3            The potential penalties are this:  Based upon what

4    Mr. -- the indictment, Count 1 of the indictment and the 851

5    notice, which -- which you had referred to and which indicates

6    that the government is seeking to enhance Mr. Bethany's

7    sentence based upon one and only one of two felony drug

8    convictions he has, would require the following sentences:  A

9    maximum sentence of 30 years' imprisonment on one; second, a

10   maximum fine of $2 million; and then, three, a term of

11   supervised release where the maximum is life and the minimum is

12   six years.  Okay, that's based upon the charge as is that

13   Mr. Bethany's pleading guilty to.

14           It is the government's position, and this would be

15   determined by a judge at sentencing, that the controlled

16   substance here was more than 50 grams of crack.  That would

17   increase the statutory minimums based upon the charge and the

18   851 notice.

19           That would require, if the judge so found more than

20   50 grams of crack, a statutory minimum sentence of 20 years'

21   imprisonment and a term of supervised release of at least ten

22   years and up to life.

23           THE COURT:  If it's not -- if it's not crack, is there

24   a minimum?

25           MR. LAUSCH:  If it's not crack, there's not a

APPENDIX 14

1    statutory minimum.

2              MR. BLEGEN:  Correct.

3              MR. SANAN:  And, Judge --

4              THE COURT:  There's a lot riding on whether or not

5    this is crack.

6              MR. SANAN:  -- just so the parties are clear that if

7    the judge at sentencing was to find that it's crack that the 20

8    minimum kicks in, the maximum still remains 30.

9              THE COURT:  Right.

10             MR. SANAN:  The maximum does not change.  I just want

11   to make sure the parties agree to that.

12             MR. FERGUSON:  Yes.

13             MR. LAUSCH:  Right.

14             And if the judge finds that it is -- well, either way,

15   there's going to be a $100 special assessment as well.

16             THE COURT:  Right.  And you're agreeing that --

17   well -- and you're agreeing that at the time of sentencing, you

18   would dismiss the other counts against him.

19             MR. LAUSCH:  Yes.  Our agreement is that the

20   government would agree to dismiss the other counts of the

21   indictment against Mr. Bethany at the time of sentencing.

22             Another matter that was discussed among the parties

23   was because Mr. Bethany had two felony drug convictions, there

24   was a possibility of a second felony -- a second notice under

25   851 that would have further enhanced Mr. Bethany's sentence.

## APPENDIX 15

 1   We have agreed not to seek that second enhancement, and

 2   Mr. Bethany is pleading guilty as we've already stated.  That's

 3   the agreement that we have.

 4            THE COURT:  And he hasn't agreed to testify or

 5   anything.

 6            MR. LAUSCH:  He has not.

 7            THE COURT:  Okay.  Mr. Bethany, do you understand all

 8   that and agree with everything we've gone over so far?

 9            THE DEFENDANT:  Yeah -- yes, Judge.

10            THE COURT:  Okay.  There's -- I have to make sure that

11   you understand the rights that you're forgoing if you don't go

12   to trial.

13            You have a right to a public and speedy trial.  It can

14   be by a jury or a judge before a jury.  In order for a trial to

15   be by a judge without a jury, you and the U.S. Attorneys and

16   the judge would have to agree upon that.  Once the trial began,

17   the same standards, the same legal standards would apply.

18            If it were a jury trial, the jury would be composed of

19   12 people who would be randomly selected.  You and your lawyers

20   would have a say in picking the jurors.  They would be

21   instructed that the government, in order to get you convicted,

22   would have to prove you guilty beyond a reasonable doubt and

23   that you're presumed to be innocent.

24            During the course of the trial, you could confront all

25   the witnesses who testified against you, and your lawyers could

## APPENDIX 16

 1   cross-examine those witnesses.

 2          We would also instruct the jury that they had to

 3   consider each count of the indictment against you separately,

 4   so before they would return a verdict on any count of either

 5   guilty or not guilty, the jury would unanimously have to agree

 6   upon the verdict for that particular count.

 7          You don't have to prove anything.  The burden is on

 8   the government to prove you guilty and, as I said, beyond a

 9   reasonable doubt.  So they would have to call witnesses and

10   present evidence.

11          But if you wanted to, you could call witnesses.  If

12   there were people who you wanted to testify who wouldn't come

13   to Court, you could use the subpoena power of the court to

14   compel them to come to court.

15          Also, you -- you would not have to testify at trial

16   and the jury would be instructed or if it was a judge, the

17   judge would know that no inference of you being guilty could be

18   drawn from the fact that you didn't testify.  However, if you

19   wanted to, you could testify on your own behalf.

20          Do you understand that by pleading guilty you're

21   waiving all of these rights?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Also, there's a chance that, whether it be

24   by Judge Leinenweber or me or whoever, whatever judge presided

25   over the trial, we might make a mistake in permitting you to

## APPENDIX 17

1    exercise your rights, and that could serve as a basis for an

2    appeal if, in fact, you were found guilty.

3            By pleading guilty today, you're waiving rights that

4    you might have had the trial gone forward and your rights been

5    violated.

6            Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Is there anything else you want to cover?

9            If you and your lawyers tell me that no threats,

10   promises or representations have been made other than the ones

11   we've discussed here in court to induce you to plead guilty,

12   then I'll accept the plea.

13           Gentlemen, is that true?

14           MR. SANAN:  That's true, Judge.

15           MR. BLEGEN:  Yes, that's true.

16           THE COURT:  Is that true?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And you are pleading guilty because you

19   believe you are guilty of Count 1 under the second superseding

20   indictment, is that true?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Okay.  I'll accept the plea.

23           Tresa, you want to give them a date?

24           THE CLERK:  April 15 at 9:45 before Judge Leinenweber.

25           THE COURT:  Now, I assume that if that time doesn't

## APPENDIX 18

 1    work out, you could work that out with his office.

 2              MR. BLEGEN:  That was a sentencing date, right?

 3              THE CLERK:  Correct.

 4              THE COURT:  So that will trigger the preparation of

 5    the PSI.

 6              MR. BLEGEN:  Just so you know, we're planning to go

 7    see Judge Leinenweber's clerk to talk about -- we need an

 8    evidentiary hearing, so we'll deal with him on that.

 9              THE COURT:  So he'll -- you know, I'm sure he'd want

10    to set a timetable for filings.  You know how much time you're

11    going to need.

12              Yes?

13              MR. FERGUSON:  Judge, I'm working from a checklist

14    here.

15              THE COURT:  Right.  What did I miss?

16              MR. FERGUSON:  I'm not sure that I heard that

17    Mr. Bethany has a right to counsel for him in court, and he has

18    the right to have appointment of counsel should he not be able

19    to afford counsel.

20              THE COURT:  Well, that's all true.  You have lawyers.

21              MR. BLEGEN:  He has retained counsel now.  I assume he

22    realizes that if he were indigent and couldn't afford a lawyer,

23    one would be appointed for him.

24              Do you know that, Rashod?

25              THE DEFENDANT:  Yeah.

## APPENDIX 19

```
 1              THE COURT:  Yes, okay.

 2              MR. FERGUSON:  That's it.

 3              MR. BLEGEN:  Thank you for your time, Judge.

 4              THE COURT:  Thank you.   It's good to see you all.

 5              MR. LAUSCH:  Thank you.

 6      (Which were all the proceedings heard.)

 7                     C E R T I F I C A T E

 8              I certify that the foregoing is a correct

 9  transcript from the record of proceedings in the above-entitled

10  matter.

11   /s/ Kathleen M. Fennell
                                         March 11, 2010
12  _____   _____
                Official Court Reporter               Date
13          United States District Court
            Northern District of Illinois
14               Eastern Division

15

16

17

18

19

20

21

22

23

24

25
```

APPENDIX 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **Case No. 06 CR 346-1** |
| v. | **Hon. Harry D. Leinenweber** |
| RASHOD BETHANY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

**I.   BACKGROUND**

Defendant Rashod Bethany ("Bethany") was indicted for conspiracy to distribute cocaine base and three substantive charges of distribution. The Government also filed an information alleging that Bethany had two previous drug convictions which, if proved, would lead to enhanced sentences if Bethany was found guilty on any of the four (4) counts. Each of the four (4) counts carries a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. However, if the Government proved that Bethany distributed crack cocaine then the mandatory minimum for each count would double to twenty years. A single enhancement if proved would also have the effect of doubling the mandatory minimum on each count to twenty years. Thus, if Bethany went to trial and was found guilty of distributing crack cocaine, or if the enhancement was established, his range of sentence would be between twenty years and life

APPENDIX 21

imprisonment.    In addition, if the Government proved any count against Bethany, a second enhancement would require a mandatory sentence of life imprisonment.

Bethany, represented by retained counsel, decided to plead guilty to Count I (conspiracy) without the benefit of a written plea agreement with the Government.  However, during the plea colloquy the Government advised the Court, with Bethany concurring, that it had orally agreed, in return for Bethany's plea of guilty to Count I, the Government would move to dismiss the three substantive drug charges, it would only seek enhancement based on a single previous drug conviction rather than two, Bethany was free to argue at sentencing that the drug he distributed was not crack cocaine, and the maximum sentence to which he would be subject would be thirty years rather than life.

The Court, during the colloquy, found Bethany to be competent to change his plea to guilty.  He found a factual basis to support the plea of guilty and that Bethany clearly acknowledged his guilt.  He also explained the rights Bethany was giving up by pleading guilty, and explained that his sentence range would either be ten to thirty years or twenty to thirty years, depending on whether the sentencing judge found the drug Bethany distributed was or was not crack.  One thing the sentencing judge failed to do was to explain to Bethany about the United States Sentencing Guidelines, about possible departure from the guidelines, and about the sentencing factors listed in 18 U.S.C. Section 3553(a).  However, toward the end of the

- 2 -

APPENDIX 22

colloquy, the judge asked all those present, including Bethany's two attorneys, if there was anything else that anyone wanted him to cover.  Although the Government requested that the judge advise Bethany that he would be entitled to have an attorney representing him at a trial, no one requested the judge to discuss the sentencing guidelines, departures, or the Section 3553 factors.  It is the failure to advise about the sentencing guidelines, departures, and the Section 3553 factors upon which Bethany now seeks to withdraw his plea of guilty to Count I.  The Government objects to the withdrawal.

## II.  **DISCUSSION**

It is important to note that Bethany was represented by two experienced defense attorneys who had the opportunity to request that additional information be imparted to Bethany if they thought there was any question in his mind concerning the possible sentence he might receive.  The judge found that Bethany was competent and knowingly and voluntarily pleading guilty. Further the judge found that Bethany freely and clearly acknowledged his guilt as to the conspiracy count to which he was pleading guilty.  Bethany does not take issue with either of these two findings by the judge.  He confirmed that he had not been induced to plead guilty by any threats or misrepresentations and that his plea of guilty was completely voluntary.

### A.  **Rule 11**

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea but before it imposes sentences if . . . the

APPENDIX 23

defendant can show a fair and just reason for requesting withdrawal."
Rule 11(d)(2)(B).  However Rule 11 also provides that the court must
inform the defendant of, and determine that he understands certain
rights including the following:  "in determining a sentence, the
court's obligation to calculate the applicable sentencing guideline
range, possible departures under the Sentencing Guidelines, and other
sentencing factors under 18 U.S.C. § 3553(a)."  Rule 11(b)(1)(M).
Clearly the judge failed to comply with this portion of Rule 11.

However, Rule 11 specifies that the right to withdraw a plea is
not absolute, as a defendant must show a "fair and just reason" for
requesting withdrawal.  *United States v. Bryant*, 557 F.3d 489, 495
(7th Cir. 2009).  The Seventh Circuit recognizes at least three
reasons it considers "fair and just" in order to allow withdrawal:
"the plea was not made voluntarily and knowingly," "actual
innocence," and "legal innocence."  *United States v. Mays*, 593 F.3d
603, 607 (7th Cir. 2010).  It is the "defendant's burden of proving
that a fair and just reason exists, and the determination of whether
a defendant has proved a sufficient fair and just reason rests within
the discretion of the district court."  *Bryant*, 557 F.3d at 495.
Finally, Rule 11(h) provides that "[a] variance from the requirements
of this rule is harmless error if it does not affect substantial
rights."

Bethany contends that the judge's failure to comply with the
provisions of Rule 11(b)(1)(M) prevented him from "voluntarily and
knowingly" pleading to Count I.  The Supreme Court in *Boykin v.*

- 4 -

# APPENDIX 24

*Alabama*, 395 U.S. 238, 244 (1969), held that a guilty plea must involve an intentional relinquishment or abandonment of a known right or privilege. If it is not voluntary and knowing then it violates due process and is void. Bethany's argument is that, due to the failure of the judge to explain the guidelines, departures, and the Section 3553 factors, he was without knowledge of where in the range of ten (or twenty) years to thirty years his sentence was likely to fall. His brief states that:

> Mr. Bethany could have surmised that a sentence
> of 20 years or less was just as likely as a
> sentence of 30 years. Under the guidelines,
> Mr. Bethany would be looking at a guideline
> sentence of life. Hence a sentence close to the
> 30-year maximum is likely and a sentence of 20
> years is highly unlikely.

However, the cases are legion that mere underestimating by a defendant when entering his plea does not constitute a fair and just reason to permit withdrawal of his plea. *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008) and cases cited. Shortcomings of a plea colloquy that do not involve substantial rights are to be disregarded. *United States v. Akinsola*, 105 F.3d 331, 334 (7th Cir. 1997); Rule 11(h). Bethany has failed to cite any case in which the 7th Circuit allowed a defendant to withdraw his guilty plea since the adoption of Rule 11(h). The closest case to consider withdrawal of a plea of guilty is *United States v. Padilla*, 23 F.3d 1220 (7th Cir. 1994), where the sentencing judge took pains to explain the operation of the sentencing guidelines to the defendant but neglected to advise him of the statutory minimum he was facing which would have the

APPENDIX 25

effect of changing the guideline minimum.  Padilla's plea agreement specified that he would receive the minimum sentence available under the guidelines.  The court said that based on the "sparse record" before it, it was impossible to say that Padilla knew that a statutory minimum would likely be applicable to him which would bind the sentencing court, thus instead of receiving a sentence at the bottom of the guidelines he would receive the statutory minimum.  The court felt that the failure to advise of the statutory minimum denied Padilla of knowledge that was most relevant to his decision to plead, the sentence he would receive.  However, Padilla did not wish to have his plea vacated but only to be re-sentenced.  The court, therefore, affirmed the sentence.

There are significant differences between *Padilla* and Bethany. First, Bethany was very adequately informed of the statutory minimums he was facing which would be dependant upon the results of the sentencing hearing to be held at a later date.  He was also informed of the maximum sentence he would be facing.  He was not told about the sentencing guidelines but the court would be hard pressed to give any kind of estimate because the quantity of drugs was not discussed and there was no agreement as to whether or not the case involved crack cocaine.  Consequently, the best estimate of the sentence he would be facing was anywhere between the minimum and the maximum.

It is clear that Bethany had been informed sufficiently about the consequences of his plea to have made an intelligent, voluntary and knowing decision as to whether to plead guilty.  He acknowledged

# APPENDIX 26

his guilt and was made aware that his sentence would depend upon a decision as to the nature of the drug he had distributed made at his sentencing hearing.  The Court on the record before it could not have been more forthcoming based on the reservation as to the nature of the drug.  Consequently, the failure to abide by all of the provisions of Rule 11 did not involve substantial rights.  Moreover, the Government's concessions were substantial and certain would lead one to believe that there was nothing unfair about the proceeding.

Accordingly, Bethany has not put forth any "fair and just reasons" as to why he should be allowed to withdraw his guilty plea. The motion to withdraw his guilty plea is denied.

### III.    <u>CONCLUSION</u>

For the reasons stated herein, the Defendant's Motion to Withdraw Plea is denied.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

**DATE:** 1/24/2011

- 7 -

<u>APPENDIX 27</u>

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 CR 346-1 | **DATE** | 2/7/2011 |
| **CASE TITLE** | United States of America vs. Rashod Bethany | | |

**DOCKET ENTRY TEXT**

Defendant's Motion to Reconsider is Denied.

■[ For further details see text below.]

Docketing to mail notices.

---

### STATEMENT

Rashod Bethany has filed a Motion for Reconsideration of the Court's denial of his Motion to Withdraw his plea of guilty. His Motion is based on the Court's failure to discuss the alleged violation of Federal Rule of Criminal Procedure 11(b)(1)(A). At his sentencing hearing the Sentencing Judge failed to advise Bethany that any statements he made under oath during the plea colloquy could be used against him in a prosecution for perjury or false statement. As pointed out in this Court's decision denying the plea withdrawal, Rule 11(h) provides for harmless error review if the error did not affect substantial rights. These rights generally are thought to be limited to (1) whether the guilty plea was coerced; (2) whether the defendant understood the nature of the charges; and (3) whether the defendant understood the consequences of his plea. *United states v. Watch*, 7 F.3d 422, 428 (5th Cir. 1993). The alleged error clearly does not affect substantial rights. There is no indication that Bethany would not have proceeded to change his plea if he thought he could be prosecuted for perjury or false statement based on his testimony during the plea colloquy. Consequently, the Court finds that the alleged error was harmless. The Motion for Reconsideration is denied.

| | Courtroom Deputy Initials: | WAP |
|---|---|---|

## APPENDIX 28

441

```
 1                   IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   UNITED STATES OF AMERICA,  )  Nos. 06 CR 346-1
                                )       06 CR 346-3
 4           vs.                )
                                )
 5   RASHOD BETHANY and         )
     RICKY LONG,                )  Chicago, Illinois
 6                              )  March 21, 2013
                    Defendants. )  10:00 a.m.
 7
                         TRANSCRIPT OF PROCEEDINGS
 8            BEFORE THE HONORABLE HARRY D. LEINENWEBER

 9   APPEARANCES:

10   For the Government:      MS. KRUTI D. TRIVEDI
                              MR. ANTHONY P. GARCIA
11                            (United States Attorney's Office,
                               219 South Dearborn Street, 5th Floor,
12                             Chicago, Illinois  60604)

13   For Defendant
     Rashod Bethany:          MR. BEAU B. BRINDLEY
14                            MR. JOSHUA J. JONES
                              (Law Offices Beau B. Brindley,
15                             53 West Jackson Boulevard, Suite 1410,
                               Chicago, Illinois  60604)
16
     For Defendant
17   Ricky Long:             MR. MICHAEL F. CLANCY
                              (Law Offices of Michael F. Clancy,
18                             53 West Jackson Boulevard, Suite 1401,
                               Chicago, Illinois  60604)
19

20

21

22

23                       PATRICK J. MULLEN
                         Official Court Reporter
24              219 South Dearborn Street, Room 1944,
                       Chicago, Illinois  60604
25                         (312) 435-5565
```

APPENDIX 29

1  was done.

2         So it seems clear that at least for the 136 days

3  we're talking about that these houses were in operation and

4  that they were selling, according to all the witnesses, at

5  least three or four or five jabs a day and they were open

6  virtually all night.  The statement given to the officer from

7  the tenant upstairs certainly corroborates that.

8         So with each of these jabs being very low, which I

9  think it was probably not very often the $100 but more often

10  around the $500 level, that being 51.1 grams in Baggies, you've

11  got five grams in each Baggie.  So that's virtually 25 grams a

12  day.  So with 15 to 25 grams a day over 136 days, you have a

13  lot of crack cocaine going through.  So it's clear to the Court

14  that the amount attributable to Mr. Bethany was in excess of

15  280 grams, and the Court so finds.

16         Now do you want to proceed to organizer and leader?

17  Do you want to argue that?  I think I've pretty well indicated

18  my ruling on whether he was an organizer.

19         MR. BRINDLEY:  Judge, one clarification on the

20  quantity first.  By what standard are you making the finding,

21  by a preponderance?

22         THE COURT:  Preponderance of the evidence, correct.

23         MR. BRINDLEY:  Okay.  What's the next one you want to

24  hear now, Judge?

25         THE COURT:  Organizer.  I'm going down the list that

1  making a sandwich.  He's there.  He takes care to distance

2  himself from certain things so that people can't think he's

3  liable, but that doesn't mean that that's the reality.  The

4  fact of the matter is he's here, that he's here with his

5  people, including Shannon Evans, who you know from the

6  witnesses was part of Bethany's Killing Crew, and two other

7  goons as they're called.

8          The others start beating Lawrence, and they kept

9  beating him and beat him basically to a pulp with a

10 two-by-four.  That is a dangerous weapon right there.  Bethany

11 is there.  It's his house.  It's his drugs.  He knows what's

12 going on, and it's his boys who are doing it.  He's entitled to

13 that enhancement as well.

14         THE COURT:  All right.  I'm going to split this one.

15 It seems to me that there is -- that this place was run, as I'm

16 probably sure that all such institutions are run, with a

17 credible threat of violence in order to maintain order and to

18 keep people from running off with the product and stealing the

19 money.  So if there wasn't a threat of violence, then there's

20 no telling what these people -- I mean, this place is open 24

21 hours.  In the instances where Ms. Hicks fell asleep, it shows

22 what can happen.  Some of the product was stolen, and she was

23 beaten.  It seems to me that Mr. Bethany is a person in control

24 and that the person in control sets the pace or the way the

25 place is run.

1            Now, as far as a weapon is concerned during this

2    period of time, I don't recall any specific evidence of a

3    weapon.  Now, it seems to me that when you claim a two-by-four

4    is a dangerous weapon, you're almost conflating the two, the

5    threat of violence along with the dangerous weapon.  You can

6    say literally that anything in the house, if detached, could be

7    used as a weapon.  You could look around here, and somebody

8    could take my mallet over here and make it a dangerous weapon.

9    I think that would be carrying it a little too far.

10            So the Court will increase two for credible threat of

11    violence, but it will decline to add two for dangerous weapon.

12    Is that it?

13            MR. BRINDLEY:  I think the stash house is the only

14    one that's left.

15            THE COURT:  The stash house, what's that?  Somebody

16    tell me the guideline provision.

17            MS. TRIVEDI:  2D1.1(b)(12).

18            THE COURT:  What?  What's the first number?

19            MS. TRIVEDI:  2D.

20            THE COURT:  2D?

21            MS. TRIVEDI:  Yes, 2D1.1(b)(12).

22            MR. JONES:  Your Honor, our objection to that is not

23    based on the technical applicability of it, but it's based upon

24    the fact that the enhancement was not in effect at the time

25    Mr. Bethany was charged.

```
1              THE COURT:  1.2?

2              MR. GARCIA:  2D1.1(b)(12).

3              THE COURT:  What page is it on?

4              MR. GARCIA:  139, Your Honor.

5              THE COURT:  Oh, 12, all right.  What's the argument

6   that that doesn't apply?

7              MR. JONES:  Your Honor, as I was saying, our argument

8   isn't that technically it doesn't apply.  Our argument is that

9   this enhancement was not in effect at the time that Mr. Bethany

10  committed the crime or when he was charged with the crime.

11  While it's true that the Seventh Circuit has found in Demaree

12  that the guideline to look at is what's applicable right now at

13  sentencing, under 3553(a) this Court is allowed to take into

14  account the fact that Mr. Bethany was not put on notice of

15  that.

16             THE COURT:  Okay.  But under the guidelines, it does

17  apply.

18             MR. JONES:  Given the Court's findings regarding the

19  house, yes.

20             THE COURT:  All right.  The Court will increase two

21  levels for that based on the Seventh Circuit precedent.  The

22  Government is urging that, is that correct?

23             MR. GARCIA:  Yes, Your Honor.

24             THE COURT:  All right.  So what do we have?  What's

25  our total?
```

## APPENDIX 33

1          MS. TRIVEDI:  The mandatory minimum in this case

2    pending proving up 280 grams is 20 years.  The maximum in this

3    case, given Mr. Bethany's plea, is 30 years.  The Government's

4    position is that 30 years is the sentence Mr. Bethany should be

5    granted in this case.

6          THE COURT:  That's actually the bottom of the

7    guidelines?  That's the statutory minimum?

8          MS. TRIVEDI:  No, Your Honor.  The minimum is 20

9    years.

10          MR. BRINDLEY:  The minimum is 20 years.

11          THE COURT:  Oh, 20, yes.

12          MR. BRINDLEY:  20 to 30 is the range if you found 280

13    grams, like you're finding.

14          THE COURT:  All right, 20 to 30.

15          MR. BRINDLEY:  Yes.

16          THE COURT:  So 360 would be it, although the

17    guidelines is 360 to life.

18          MS. TRIVEDI:  Yes, Your Honor.

19          THE COURT:  The statutory maximum is 30.

20          MS. TRIVEDI:  Yes, Your Honor, and the Government is

21    not arguing that it should be beyond the statutory maximum.

22          THE COURT:  That's 360.  All right.

23          MR. BRINDLEY:  Your Honor, to begin with in terms of

24    the sentencing recommendation, I want to start with the stash

25    house issue that we were just talking about briefly.

## APPENDIX 34